# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **COUNCIL OF ATHABASCAN** | ) | |
| **TRIBAL GOVERNMENTS**, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1270 (RWR) |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **MICHAEL O. LEAVITT**, Secretary of the | ) | |
| Department of Health & Human Services; and | ) | |
| **ROBERT G. McSWAIN**, Acting Director, | ) | |
| Indian Health Service; | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

## PLAINTIFF'S NOTICE OF NEW AUTHORITY

Plaintiff, Council of Athabascan Tribal Governments (CATG), respectfully files this

Notice to bring to the Court's attention two recent decisions supporting Plaintiff's first claim for

relief for breach of contract.   On July 28, 2008, the United States Civilian Board of Contract

Appeals (CBCA) issued decisions in *Metlakatla Indian Tribe v. Department of Health and

Human Services*, Case No. CBCA 181-ISDA, 280-ISDA, 282-ISDA [*Metlakatla*] and in

*Confederated Tribes of Coos, Lower Umpqua, and Siuslaw Indians*, Case No. CBCA 171-ISDA,

235-ISDA, 236-ISDA, 237-ISDA [*Coos*] (copies attached).  In each of those cases, the CBCA

held that the defense of laches does not bar the tribes' claims for contract support costs for FY

1995, given the lack of prejudice to the Indian Health Service and that the pending contract

support cost class action litigation (*Cherokee Nation of Oklahoma v. United States*) excused the

tribes' delay.  *Metlakatla* at 6-8; *Coos* at 6-8.

Here, CATG has presented FY 1995 contract support cost claims for FY 1995 that are virtually identical to those presented by the tribes in the *Metlakatla* and *Coos* cases.  Like the tribes in those CBCA cases, CATG relied upon the named parties in the then-pending *Cherokee* class action to vindicate its rights against the United States.  These two CBCA decisions provide further support for Plaintiff's arguments that at no time did it sleep on its rights regarding the FY 1995 claim.

Respectfully Submitted,

_____/s/_____
F. Michael Willis (D.C. Bar No. 467462)
HOBBS, STRAUS, DEAN & WALKER, LLP
2120 L Street, NW, Suite 700
Washington, DC  20037
202-822-8282 (Tel.)
202-296-8834 (Fax)

_____/s/_____
Geoffrey D. Strommer
HOBBS, STRAUS, DEAN & WALKER, LLP
806 SW Broadway, Suite 900
Portland, Oregon 97205
503-242-1745 (Tel.)
202-242-1072 (Fax)

Attorneys for the Council of
Athabascan Tribal Governments

DATED: July 30, 2008



**UNITED STATES**
**CIVILIAN BOARD OF CONTRACT APPEALS**

## ACKNOWLEDGMENT OF RECEIPT OF INFORMATION
## FACSIMILE TRANSMITTAL SHEET

**DATE:**    July 28, 2008

**FROM:**    Judge Steel 202-606-8817

**CBCA:**    Metlakatla Indian Tribe v. Indian Health Service

**SUBJECT:**  ORDER

**TO:**    [APPELLANT]
      Geoffrey D. Strommer, Esq.
      Hobbs, Straus, Dean & Walker, LLP
      Portland, OR 97295
      FAX: 503-242-1072

      [RESPONDENT]
      Melissa Jamison, Esq.
      Office of the General Counsel
      Rockville, MD 98121
      FAX: 301-480-2161

---

**SIGNATURE OF RECEIVING OFFICIAL DATE**

**TOTAL PAGES TRANSMITTED:14**
UPON RECEIPT OF THIS DOCUMENT, PLEASE <u>SIGN</u> THIS SLIP AND
<u>RETURN</u> IT TO THE CIVILIAN BOARD OF CONTRACT APPEALS, 1800 F
STREET, N.W., WASHINGTON, DC 20405. YOU CAN FAX: 202-606-0019.

# UNITED STATES
# CIVILIAN BOARD OF CONTRACT APPEALS

SCHEDULING ORDER: July 28, 2008

CBCA 181-ISDA, 279-ISDA, 280-ISDA, 281-ISDA, 282-ISDA

METLAKATLA INDIAN COMMUNITY,

Appellant,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Respondent.

Geoffrey D. Strommer of Hobbs, Straus, Dean & Walker, LLP, Portland, OR, counsel for Appellant.

Melissa Jamison, Office of the Solicitor, Department of Health and Human Services, Rockville, MD, counsel for Respondent.

**STEEL**, Board Judge.

## ORDER

The Board, this date, has issued a decision denying in part and granting in part the Government's motion to dismiss. Counsel and parties are invited to confer, and be prepared to submit to this Board a joint status report proposing further proceedings in these appeals on September 29, 2008.

*Candida Steel*

CANDIDA S. STEEL
Board Judge



**UNITED STATES**
**CIVILIAN BOARD OF CONTRACT APPEALS**

MOTION TO DISMISS GRANTED AS TO CBCA 280-ISDA AND 281-ISDA
AND DENIED AS TO CBCA 181-ISDA, 279-ISDA, AND 292-ISDA: July 28, 2008

CBCA 181-ISDA, 279-ISDA, 280-ISDA, 281-ISDA, 282-ISDA

METLAKATLA INDIAN COMMUNITY,

Appellant,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Respondent.

Geoffrey D. Strommer of Hobbs, Straus, Dean & Walker, LLP, Portland, OR, counsel for Appellant.

Melissa Jamison, Office of the General Counsel, Department of Health and Human Services, Rockville, MD, counsel for Respondent.

Before Board Judges **HYATT**, **DeGRAFF**, and **STEEL**.

**STEEL**, Board Judge.

For all the years at issue in these appeals, the Metlakatla Indian Community (Metlakatla) provided health care services to its members under self-determination contracts or compacts with the Department of Health and Human Services (HHS) Indian Health Service (IHS), pursuant to the Indian Self-Determination and Education Assistance Act (ISDA or Act), Pub. L. No. 93-638, codified as amended at 25 U.S.C. §§ 450, *et seq.* (2000). Metlakatla seeks additional amounts of indirect contract support cost (CSC) funding from IHS under ISDA contracts and compacts in fiscal years (FYs) 1995 through 1999. IHS moves to dismiss the appeals.

CBCA 181-ISDA, 279-ISDA, 280-ISDA, 281-ISDA, 282-ISDA                        2

<u>Background</u>

In 1975, Congress enacted the ISDA to encourage Indian self-government by allowing the transfer of certain federal programs operated by the Federal Government, including health care services programs, to tribal governments and other tribal organizations by way of contracts. The amount of contract funds provided to the tribes was the same as the amount IHS would have provided if it had continued to operate the programs. This amount is known as the "Secretarial amount" or "tribal shares." 25 U.S.C. § 450j-l(a). The Secretarial amount, however, included only the funds IHS would have provided directly to operate the programs. It did not include funds for additional administrative costs the tribes incurred in running the programs, but which IHS would not have incurred, such as the cost of annual financial audits, liability insurance, personnel systems, and financial management and procurement systems. S. Rep. No. 100-274, at 8-9 (1987).

In 1988, Congress amended the ISDA to authorize IHS to negotiate additional instruments, self-governance "compacts," with a selected number of tribes. Pub. L. No. 100-472, tit. II, § 201(a), (b)(1), 102 Stat. 2288, 2289 (1988); *see* 25 U.S.C. § 450f note (repealed by Pub. L. No. 106-260, § 10, 114 Stat. 711, 734 (2000)). Under this more flexible Tribal Self-Governance Demonstration Project, the selected tribes were given the option of entering into either contracts or compacts[1] with IHS to perform certain programs, functions, services, or activities (PFSAs) which IHS had operated for Indian tribes and their members. If a tribe and IHS entered into a compact, they also entered into annual funding agreements (AFAs).

The 1988 amendments also provided for funding for the additional administrative costs which tribes incurred in running health services programs. The statute as amended provides that there shall be added to the Secretarial amount contract support costs "which shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management." 25 U.S.C. § 450j-l(a)(2). These amounts are for "costs which normally are not carried on by the respective Secretary in his direct operation of the program; or . . . are provided by the Secretary in support of the contracted program from resources other than those under contract." *Id.*

There are three categories of CSC: start-up costs, indirect costs (IDC), and direct costs. Start-up costs are one-time costs necessary to plan, prepare for, and assume operation of a new or expanded PFSA, such as the start-up costs for a new clinic. Indirect costs are

---

[1]    For the purposes of this decision, there are no significant differences between contracts and compacts.

CBCA 181-ISDA, 279-ISDA, 280-ISDA, 281-ISDA, 282-ISDA                               3

those costs incurred for a common or joint purpose, but benefiting more than one PFSA, such as administrative and overhead costs. Direct CSC are expenses which are directly attributable to a certain PFSA but which are not captured in either the Secretarial amount or indirect costs, such as workers' compensation insurance, which the Secretary would not have incurred if the agency were operating the program. 25 U.S.C. § 450j-1(a).

The provision of funds for CSC is "subject to the availability of appropriations," notwithstanding any other provision in the ISDA, and IHS is not required to reduce funding for one tribe to make funds available to another tribe or tribal organization. 25 U.S.C. § 450j-1(b).

From one fiscal year to the next, IHS cannot reduce the Secretarial amount and the CSC it provides except pursuant to:

> (A) a reduction in appropriations from the previous fiscal year for the program or function to be contracted;
> (B) a directive in the statement of the managers accompanying a conference report on an appropriation bill or continuing resolution;
> (C) a tribal authorization;
> (D) a change in the amount of pass-through funds needed under a contract; or
> (E) completion of a contracted project activity or program.

25 U.S.C. § 450j-1(b)(2).

IHS is required to prepare annual reports for Congress regarding the implementation of the ISDA. Among other things, these reports include an accounting of any deficiency in the funds needed to provide contractors with CSC. 25 U.S.C. § 450j-1(c). The reports which set out the deficiencies in funds needed to provide CSC are known as "shortfall reports." Complaint ¶ 14; 25 U.S.C. § 450j-1(c), (d). Each IHS Area Office, including the Alaska Area Office, prepared shortfall reports for FYs 1995 - 1999 which were submitted to Congress. Complaint ¶ 14; Answer ¶ 14.

For FYs 1995 through 1998, Congress set aside $7.5 million of IHS's appropriated funds into the Indian Self-Determination (ISD) fund which were to be used for the transitional costs of new or expanded tribal programs. Department of the Interior and Related Agencies Appropriations Act, 1995, Pub. L. No. 103-332, tit. II, 108 Stat. 2499, 2528 (1994); Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, 1321-189 (1996) ; Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, 110 Stat. 3009, 3009-12 (1996); Department of the Interior and Related Agencies Appropriations Act, 1998, Pub. L. No. 105-83, 111 Stat. 1543, 1582

CBCA 181-ISDA, 279-ISDA, 280-ISDA, 281-ISDA, 282-ISDA                    4

(1997). In connection with the ISD fund, IHS developed a policy for funding CSC for new or expanded programs. IHS established a priority list, called the "queue," and funded CSC for new or expanded programs on a first-come, first-served basis, as determined by the date on which IHS received a tribe's request for funding. *See, e.g.*, IHS Circular No. 96-04, § 4.A(4)(a)(ii). Thus, IHS would fund the first request it received for funding CSC for a new or expanded program, then it would fund the next request it received, and it would continue funding CSC requests until the ISD funds were exhausted for a fiscal year. Requests not funded during one fiscal year moved up the queue to be paid when the next fiscal year's funds were distributed. Appeal File, Exhibit 4-29, Indian Self-Determination Memorandum (ISDM) 92-2 ¶ 4-C(1), at 4.

One of the 1988 amendments to the ISDA provided that the Contract Disputes Act (CDA) "shall apply to self-determination contracts." 25 U.S.C. § 450m-1(d). In 1994, Congress amended the Contract Disputes Act to include a six-year time limit for presenting a claim to the contracting officer (often an awarding official in the ISDA context):

> All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. . . . Each claim by a contractor against the government relating to a contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim. The preceding sentence does not apply to a claim by the government against a contractor that is based on a claim by the contractor involving fraud.

41 U.S.C. § 605(a).

<u>Findings of Fact</u>

In 1988, Metlakatla entered into contract no. 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 for "various Health and Related Services for Alaska Natives, Annette Island Reserve." Appeal File, Exhibit 2 at 3-1. For Fiscal Year 1995, effective October 1, 1994, amendment no. 54 modified the original contract and extended the period of performance to cover the period from October 1, 1994, through September 30, 1995. *Id.* at 4-1.

On April 1, 1995, Metlakatla and IHS entered into a new Self-Determination Contract, no. 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, together with attachment 2, the applicable AFA, to deliver health services from April 1 to September 30, 1995. Appeal File, Exhibits 5, 6. The AFA for FY 1996, amendment 8 to contract 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, was signed on September 28, 1995, with an effective date of December 1, 1995. *Id.*, Exhibit 11.

CBCA 181-ISDA, 279-ISDA, 280-ISDA, 281-ISDA, 282-ISDA                5

The "Alaska Tribal Health Compact between Certain Alaska Native Tribes and the United States of America" (ATHC) and related negotiated AFAs authorized thirteen Alaskan tribes to operate health care programs. Appeal File, Exhibit 2 at 15-1. Metlakatla joined the ATHC for FY 1997 and the years thereafter. Complaint ¶ 1; Appeal File, Exhibits 15-18.

On August 19, 1999, Metlakatla submitted a claim for unpaid CSC in the amount of $132,878 ($44,033 in CSC funding for tribal shares and $88,845 to defray start-up costs for a new or expanded program). IHS denied the claim on April 17, 2000, and Metlakatla did not appeal IHS's decision. Metlakatla agrees it is too late to appeal this decision. Appellant's Response to Respondent's Motion to Dismiss at 10. Although the claim was submitted in FY 1999, the claim and the awarding official's decision say these amounts were contained in the FY 1997 AFA and repeated in the AFAs for FY 1998 and FY 1999.

Metlakatla's FY 1995 claim is dated June 30, 2005 and was received by the awarding official on July 1, 2005. Appeal File, Exhibits 2 at 1, 20 at 1. The claim was for $114,191, which is the amount listed on the shortfall report. *Id.*

Metlakatla's FY 1996 claim is dated June 30, 2005, and was received on July 1, 2005. Appeal File, Exhibits 2 at 4, 20 at 1. The claim was for $155,632, which is the amount listed on the shortfall report. *Id.*

Metlakatla's FY 1997 claim is dated June 30, 2005, and was received on July 1, 2005. Appeal File, Exhibit 2 at 8. The claim was for $262,116, which is $230,980 listed on the shortfall report, plus $24,230 listed in the queue and not accounted for in the shortfall report, and $6906 in additional indirect CSC. *Id.* at 4.

Metlakatla's FY 1998 claim is dated June 30, 2005, and was received on July 1, 2005. The claim was for $134,767, which included funds for CSC for ongoing programs. Appeal File, Exhibits 2 at 10, 20 at 2. The amount listed on the shortfall report was $128,396. *Id.*

Metlakatla's FY 1999 claim is dated June 30, 2005, and was received on July 1, 2005. The claim was for either $119,429, which is based upon a contract theory of recovery which assumes the appropriation for FY 1999 is capped and which seeks to recover for a breach of statutory sections which are incorporated in the compact, or $211,330, which is based upon a theory of recovery which challenges the applicability of the appropriations cap and which asks for the amount listed on the shortfall report. Appeal File, Exhibits 2 at 15, 20 at 2.

Except for the denial of the August 19, 1999 claim, the contracting officer did not issue decisions on these claims. They are therefore deemed denied. 41 U.S.C. § 605(c)(5). Appeals were filed with the Department of the Interior Board of Contract Appeals on May

CBCA 181-ISDA, 279-ISDA, 280-ISDA, 281-ISDA, 282-ISDA                                    6

8, 2006, and docketed as cases IBCA-4767/2006 through IBCA-4771/2006. On January 6, 2007, the Department of the Interior Board of Contract Appeals was merged with other civilian agency boards into the Civilian Board of Contract Appeals (CBCA), where the cases were docketed as described below. Pub. L. No. 109-163, § 847, 119 Stat. 3136 (2006).

<u>Discussion</u>

In their briefs, the parties make a great many arguments, all of which we carefully considered. Due to the manner in which we resolve the issues before us, it is not necessary for us to address each of the arguments they raised in order to resolve the motion to dismiss. As explained below, laches does not bar Metlakatla's FY 1995 claim and we possess jurisdiction to consider the FY 1996 claim. We lack subject matter jurisdiction to consider the FY 1997 and FY 1998 claims. We possess subject matter jurisdiction to consider the FY 1999 claim and we cannot dismiss it for failure to state a claim upon which relief can be granted. Therefore, we grant the motion to dismiss, in part.

<u>FY 1995 (CBCA 181-ISDA)</u>

The parties agree that the claim for FY 1995 accrued on the last day of the fiscal year, which was September 30, 1995, since appellant could expect no further payments for the fiscal year after that date. On June 30, 2005, Metlakatla submitted this claim to the awarding official. In its motion to dismiss, IHS raises the equitable defense of laches in response to the claim for FY 1995 CSC.[2]

In order to persuade us to apply a laches defense, IHS must establish that Metlakatla delayed submitting its claim for an unreasonable and inexcusable length of time and that this delay resulted in prejudice or injury to the Government. *Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc); *Cornetta v. Lehman*, 851 F.2d 1372, 1377-78 (Fed. Cir. 1988) (en banc); *SUFI Network Services, Inc.*, ASBCA 55948, 08-1 BCA ¶ 33,766 at 167,149; *Systems Integrated*, ASBCA 54439, 05-2 BCA ¶ 32,978 at 163,380. IHS can establish the existence of undue delay and prejudice either by establishing

---

[2]     Usually, the equitable defense of laches is resolved upon motion for summary judgment or relief or, where there are genuine facts in dispute, following trial. *A.C. Aukerman Co. v. R. L. Chaides Construction Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc), *Houston Ship Repair, Inc. v. U.S. Department of Transportation*, DOT BCA 4505, 06-2 BCA ¶ 33,381; *2160 Partners v. General Services Administration*, GSBCA 15973, 03-2 BCA ¶ 32,269. However, IHS raised the issue in its motion to dismiss, and we address it here.

CBCA 181-ISDA, 279-ISDA, 280-ISDA, 281-ISDA, 282-ISDA                    7

there is a presumption of laches or by offering actual proof of undue delay and prejudice. *Aukerman*, 960 F.2d at 1036.

Relying upon *Aukerman*, IHS asks us to decide that a presumption of laches exists because Metlakatla failed to submit its claim to the awarding official within the six-year time limit contained in section 605(a) of the CDA. In addition, IHS says Metlakatla waited an unreasonable and inexcusable length of time to submit the claim to the contracting officer, and says its ability to defend against Metlakatla's claim has been prejudiced by the delay. Respondent's Motion to Dismiss at 16-18.

We do not need to decide whether we should create a presumption of laches based upon the six-year time limit contained in section 605(a) of the CDA because even if we were to do so, we would conclude Metlakatla has eliminated the presumption by offering proof to show its delay was excusable. Metlakatla has shown its delay was the result of other litigation, which is one of the reasons the Court in *Aukerman* recognized as justifying a delay. *Aukerman*, 960 F.2d at 1033, 1038.

On March 5, 1999, the Cherokee Nation of Oklahoma filed a complaint against IHS in the United States District Court for the Eastern District of Oklahoma. The tribe requested certification of a class consisting of "all Indian tribes and tribal organizations operating Indian Health Service Programs under [the ISDA] that were not fully paid their contract support cost needs. . . ." *Cherokee Nation of Oklahoma v. United States*, 199 F.R.D. 357, 360 (E.D. Okla. 2001) (hereinafter *Cherokee Nation of Oklahoma*). Nearly two years later, on February 9, 2001, the court denied the request for class certification. Metlakatla asserts that it was a putative class member in this lawsuit, and the Government has not disputed this fact. Appellant's Response to Respondent's Motion to Dismiss at 5-6. Further, Metlakatla plausibly suggests that the basis for its FY 1995 claim was uncertain until the Supreme Court issued its decision in *Cherokee Nation v. Leavitt*, 543 U.S. 631 (2005). Metlakatla submitted its claim to the awarding official approximately four years after the request for class certification was denied in *Cherokee Nation of Oklahoma*, and approximately two months after the Supreme Court's decision in *Cherokee Nation*. The existence of this other litigation provides Metlakatla with an excuse for its delay such as would eliminate any presumption of laches.

After reviewing IHS's actual proof of unreasonable delay and prejudice, we find it lacking. Regarding delay, the existence of the litigation discussed in the preceding paragraph counters IHS's proof that Metlakatla unduly delayed submitting its claim to the awarding official. Regarding prejudice, IHS says it has been prejudiced by witnesses retiring from the agency and by its inability to locate relevant documents. Respondent's Reply to Appellant's Response to Motion to Dismiss at 16-17. These statements are allegations of counsel,

CBCA 181-ISDA, 279-ISDA, 280-ISDA, 281-ISDA, 282-ISDA                    8

however, and are not evidence. In addition, although witnesses may have retired, this does not mean they are unavailable to testify. *Hoover v. Department of the Navy*, 957 F.2d 861, 863-64 (Fed. Cir. 1992). Moreover, the pendency of the litigation discussed above ought to have alerted IHS to the need to preserve relevant documents for tribes which might become class members.

IHS has failed to persuade us that we should apply a laches defense and bar the claim for FY 1995 CSC. Even if we were to create a presumption of laches based upon section 605(a) of the CDA, Metlakatla has eliminated the presumption by providing a valid excuse for its delay. IHS's actual proof of unreasonable delay and prejudice is insufficient to convince us to exercise our discretion in its favor. Therefore, we deny the motion to dismiss the FY 1995 claim on the grounds of laches.[3]

### FY 1996 (CBCA 279-ISDA)

IHS moves to dismiss Metlakatla's FY 1996 claim for lack of subject matter jurisdiction because Metlakatla failed to submit this claim to the awarding official within six years after it accrued, as required by section 605(a) of the CDA. Respondent's Motion to Dismiss at 11. In resolving IHS's motion, we assume all well-pled factual allegations are true and find all reasonable inferences in favor of the non-moving party. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (stating that decisions on such motions to dismiss rest "on the assumption that all the allegations in the complaint are true"); *Leider v. United States*, 301 F.3d 1290, 1295 (Fed. Cir. 2002); *Gould Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991); *Kawa v. United States*, 77 Fed. Cl. 294, 298 (2007); *Barth v. United States*, 28 Fed. Cl. 512, 514 (1993).

In order to evaluate IHS's motion, we must determine the applicability of the six-year time limit contained in section 605(a) of the CDA. The CDA did not include the six-year time limit until its amendment in 1994 by the Federal Acquisition Streamlining Act, Pub. L. No. 103-355, § 2351(a), 108 Stat. 3243, 3322 (Oct. 13, 1994). This time limit was not immediately applicable on the date of enactment. Instead, its applicability depended upon the promulgation of final regulations. *Id.* § 10001(b)(2), 108 Stat. at 3404; *see also Motorola, Inc. v. West*, 125 F.3d 1470, 1473 (Fed. Cir. 1997). On September 18, 1995, the

---

[3]     *But see Menominee Indian Tribe of Wisconsin v. United States*, No. 1:07cv-00812 (D.D.C. Mar. 24, 2008), *reconsideration denied* (Apr. 30, 2008), in which the district court dismissed the Menominee Indian Tribe's CSC claim for FY 1995 on the grounds that the claim was barred by laches. The Board is not bound by this decision and we reach a contrary conclusion after considering the arguments raised and facts presented to us.

CBCA 181-ISDA, 279-ISDA, 280-ISDA, 281-ISDA, 282-ISDA                                    9

Office of Management and Budget's Office of Federal Procurement Policy (OFPP) published amendments to the Federal Acquisition Regulation (FAR). 60 Fed. Reg. 48,224, 48,230 (Sept. 18, 1995). The regulation at 48 CFR 33.206 states that the six-year limit does not apply to contracts awarded prior to October 1, 1995.

Because the six-year time limit contained in section 605(a) does not apply to contracts awarded prior to October 1, 1995, we look to see when the contract which provided for the payment of FY 1996 CSC was awarded. The parties agree that they entered into a contract on April 4, 1995, and that the related AFA for FY 1996 was signed on September 28, 1995, with an effective date of October 1, 1995. Respondent's Reply to Appellant's Response to Motion to Dismiss at 14-15, Appellant's Rebuttal Brief in Response to Respondent's Reply on Respondent's Motion to Dismiss at 10-11. IHS argues that because the effective date of the FY 1996 AFA is October 1, 1995, it is subject to the six-year limit set out in section 605(a) of the CDA. Respondent's Reply to Appellant's Response to Motion to Dismiss at 14.

IHS's argument misses the mark because according to the regulation which implemented section 605(a), the applicability of the six-year time limit depends upon the award date of a contract, not a contract's effective date. The contract which underlies this claim was awarded on April 4, 1995, and the related AFA for FY 1996 was awarded on September 28, 1995. Because the six-year time limit does not apply to contracts awarded prior to October 1, 1995, the limit does not apply, whether the relevant effective date is that of the underlying contract or the AFA. Therefore, we deny the motion to dismiss the FY 1996 claim for lack of subject matter jurisdiction.

FY 1997 (CBCA 280-ISDA)

The FY 1997 claim accrued on the last day of the fiscal year, which was September 30, 1997. On June 30, 2005, Metlakatla submitted this claim to the awarding official. IHS moves to dismiss the FY 1997 claim for lack of subject matter jurisdiction because Metlakatla failed to submit this claim to the awarding official within six years after it accrued, as required by section 605(a) of the CDA. Respondent's Motion to Dismiss at 13-14. Metlakatla contends the six-year time limit was met, because the time limit was either equitably or legally tolled. Appellant's Response to Respondent's Motion to Dismiss at 18-31.

Tolling, whether equitable or legal, is a concept which applies to statutes of limitation. If a court (or a board) possesses jurisdiction to consider a claim, the claim must be filed before the limitations period expires or else it becomes unenforceable. A time limit for filing suit can be suspended, in effect, based upon equitable considerations, *Irwin v. Department*

of *Veterans Affairs*, 498 U.S. 89 (1990), or based upon legal considerations, *Stone Container Corp. v. United States*, 229 F.3d 1345, 1354 (Fed. Cir. 2000). If the applicable statute is tolled for a sufficient period, the time limit for filing suit is met.

Section 605(a) does not contain a statute of limitations which imposes a time limit for filing suit. Rather, it imposes a time limit which this Board's precedent establishes is a prerequisite to our jurisdiction. *Greenlee Construction, Inc. v. General Services Administration*, CBCA 416, 07-1 BCA ¶ 33,514; *accord, Gray Personnel, Inc.*, ASBCA 54652, 06-2 BCA ¶ 33,378; *see also Pueblo of Zuni v. United States*, 467 F. Supp. 2d 1099 (D.N.M. 2006). As *Gray Personnel* explained:

> Under the CDA, there are two prerequisites to an appeal to the Board or to the United States Court of Federal Claims:
>
> > Those prerequisites are (1) that the contractor must have submitted a proper CDA claim to the contracting officer requesting a decision, . . . [41 U.S.C.] § 605(a), and (2) that the contracting officer must either have issued a decision on the claim, . . . § 609(a), or have failed to issue a final decision within the required time period, . . . § 605(c)(5).

*England v. Sherman R. Smoot Corp.*, 388 F.3d 844, 852 (Fed. Cir. 2004). If a contractor has not submitted a proper claim, the contracting officer does not have the authority to issue a decision:

> The Act . . . denies the contracting officer the authority to issue a decision at the instance of a contractor until a contract "claim" in writing has been properly submitted to him for a decision. § 605(a). Absent this "claim", no "decision" is possible – and, hence, no basis for jurisdiction . . . .

*Paragon Energy Corp. v. United States*, 645 F.2d 966, 971 (Ct. Cl. 1981). Thus, "[i]t is well established that without . . . a formal claim and final decision by the contracting officer, there can be no appeal . . . under the CDA. It is a jurisdictional requirement." *Milmark Services, Inc. v. United States*, 231 Ct. Cl. 954, 956 (1982).

Section 605(a) as implemented by FAR subpart 33.2, Disputes and Appeals, is the key provision in determining whether there is a proper or formal claim for purposes of the CDA. *See, e.g., Reflectone, Inc. v. Dalton*, 60 F.3d 1572,

1575 (Fed. Cir. 1995) (en banc) (definition of a claim); *Transamerica Insurance Corp. v. United States*, 973 F.2d 1572, 1576 (Fed. Cir. 1992) (requirement that a claim be submitted for a decision). [The Federal Acquisition Streamlining Act] added the six-year requirement to this key provision, rather than, for example, to 41 U.S.C. §§ 606 or 609, establishing filing periods at the boards and the United States Court of Federal Claims. We conclude, in view of the placement of the six-year provision in § 605(a), that the requirement that a claim be submitted within six years after its accrual, like the other requirements in that section, is jurisdictional. *Accord Axion Corp. v. United States*, 68 Fed. Cl. 468, 480 (2005).

*Gray Personnel, Inc.*, 06-2 BCA at 165,474-75. *Cf. John R. Sand & Gravel Co. v. United States*, 128 S. Ct. 750 (2008).

Metlakatla's failure to submit its FY 1997 claim to the awarding official within six years after it accrued, as required by section 605(a) of the CDA, deprived this Board of jurisdiction to consider the claim. We cannot suspend the running of the six-year time limit any more than we could suspend the requirements, also found in section 605, that a claim must be submitted to the contracting officer, that a claim must be submitted in writing, and that a claim in excess of $100,000 must be certified. In the absence of a claim which meets all the requirements of section 605, we lack jurisdiction to consider an appeal.

We grant the motion to dismiss the FY 1997 claim for lack of subject matter jurisdiction because Metlakatla failed to submit this claim to the awarding official within six years after it accrued, as required by section 605(a) of the CDA.[4]

### FY 1998 (CBCA 281-ISDA)

The FY 1998 claim accrued on the last day of the fiscal year, which was September 30, 1998. On June 30, 2005, Metlakatla submitted this claim to the awarding official. For the same reason we grant the motion to dismiss the FY 1997 claim, we grant the motion to dismiss the FY 1998 claim. We lack subject matter jurisdiction because Metlakatla failed to submit this claim to the awarding official within six years after it accrued, as required by section 605(a) of the CDA.

---

[4]     If we had jurisdiction to consider the FY 1997 claim, it would not extend to any amounts included in the claim dated August 19, 1999, because IHS denied this claim on April 17, 2000, and IHS's decision became final when Metlakatla did not appeal.

CBCA 181-ISDA, 279-ISDA, 280-ISDA, 281-ISDA, 282-ISDA                    12

### FY 1999 (CBCA 282-ISDA)

The FY 1999 claim accrued on the last day of the fiscal year, which was September 30, 1999. On June 30, 2005, Metlakatla submitted this claim to the awarding official. We have jurisdiction to consider this claim because Metlakatla submitted it to the awarding official within six years after it accrued, as required by section 605(a) of the CDA. IHS argues that Metlakatla fails to state a claim upon which relief can be granted because in FY 1999, Congress limited the amount of money which IHS had available to fund CSC.

We agree with IHS that Congress restricted the funds available for CSC in FY 1999. The requirement to fund CSC is subject to the availability of appropriations, notwithstanding any other provisions of the ISDA. 25 U.S.C. § 450j-1(b). Congress restricted IHS's FY 1999 appropriation when it provided "not to exceed $203,781,000 shall be for payments to tribes and tribal organizations for contract or grant support costs . . . ." Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, § 328, 112 Stat. 2681, 2681-337 (1998). No separate amount was designated for the Indian Self-Determination Fund for initial and expanded programs. *Id.*

The fact that funds for CSC were restricted in FY 1999 does not, however, mean that Metlakatla has failed to state a claim upon which relief can be granted. If providing Metlakatla with additional funding for CSC would have caused IHS to expend more than $203,781,000 for CSC in FY 1999, Metlakatla had no statutory or contractual right to such additional funding and its claim for additional funding would not be one upon which we could grant relief. *Greenlee County, Arizona v. United States*, 487 F.3d 871 (Fed. Cir. 2007); *Babbitt v. Oglala Sioux Tribal Public Safety Department*, 194 F.3d 1374 (Fed. Cir. 1999); *Ramah Navajo School Board, Inc. v. Babbitt*, 87 F.3d 1338 (D.C. Cir. 1996). If, however, IHS could have provided Metlakatla with additional funding for CSC without expending more than $203,781,000 for CSC in FY 1999, Metlakatla might be able to establish it had a statutory or contractual right to such funding up to the amount of the unexpended funds, in which case its claim would be one upon which we could grant relief. We do not know how much of the $203,781,000 IHS expended during FY 1999.

Because we do not know whether providing Metlakatla with additional funding for CSC would have caused IHS to expend more than $203,781,000 for CSC for FY 1999, we deny the motion to dismiss the FY 1999 claim for failure to state a claim upon which relief can be granted.

CBCA 181-ISDA, 279-ISDA, 280-ISDA, 281-ISDA, 282-ISDA                    13

<u>Decision</u>

The motion to dismiss is **GRANTED** as to CBCA 280-ISDA and 281-ISDA. The motion to dismiss is **DENIED** as to CBCA 181-ISDA, 279-ISDA, and 282-ISDA.


*Candida Steel*

CANDIDA S. STEEL
Board Judge

We concur:


*Catherine B. Hyatt*

CATHERINE B. HYATT
Board Judge


*Martha DeGraff*

MARTHA H. DeGRAFF
Board Judge



**UNITED STATES
CIVILIAN BOARD OF CONTRACT APPEALS**

## ACKNOWLEDGMENT OF RECEIPT OF INFORMATION
## FACSIMILE TRANSMITTAL SHEET

**DATE:**    **July 28, 2008**

**FROM:**    **Judge Steel  202-606-8817**

**CBCA:**    **Confederated Tribes of Coos Lower Umpqua & Siuslaw Indians  v.**
**DHHS**

**SUBJECT:  ORDER**

**TO:**    **[APPELLANT]**
**Geoffrey D. Strommer, Esq.**
**Hobbs, Straus, Dean & Walker, LLP**
**Portland, OR  97205**
**FAX:  503-242-1072**

**[RESPONDENT]**
**Jay Furtick, Esq.**
**Office of the General Counsel**
**Seattle, WA  98121**
**FAX:  206-615-2286**

_____

**SIGNATURE OF RECEIVING OFFICIAL  DATE**

**TOTAL PAGES TRANSMITTED: 12**
**UPON RECEIPT OF THIS DOCUMENT, PLEASE SIGN THIS SLIP AND**
**RETURN IT TO THE CIVILIAN BOARD OF CONTRACT APPEALS, 1800 F**
**STREET, N.W., WASHINGTON, DC 20405.  YOU CAN FAX:  202-606-0019.**



**UNITED STATES**
**CIVILIAN BOARD OF CONTRACT APPEALS**

SCHEDULING ORDER: July 28, 2008

CBCA 171-ISDA, 235-ISDA, 236-ISDA, 237-ISDA

CONFEDERATED TRIBES OF COOS, LOWER UMPQUA,
AND SIUSLAW INDIANS,

Appellant,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Respondent.

Geoffrey D. Strommer of Hobbs, Straus, Dean & Walker, LLP, Portland, OR, counsel for Appellant.

Jay Furtick, Office of the Solicitor, Department of Health and Human Services, Seattle, WA, counsel for Respondent.

**STEEL**, Board Judge.

### **ORDER**

The Board, this date, has issued a decision denying in part and granting in part the Government's motion to dismiss. Counsel and parties are invited to confer, and be prepared to submit to this Board a joint status report proposing further proceedings in these appeals on September 29, 2008.

CANDIDA S. STEEL
Board Judge



**UNITED STATES
CIVILIAN BOARD OF CONTRACT APPEALS**

MOTION TO DISMISS GRANTED AS TO CBCA 235-ISDA AND 236-ISDA
AND DENIED AS TO CBCA 171-ISDA AND 237-ISDA: July 28, 2008

CBCA 171-ISDA, 235-ISDA, 236-ISDA, 237-ISDA

CONFEDERATED TRIBES OF COOS, LOWER UMPQUA,
AND SIUSLAW INDIANS,

Appellant,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Respondent.

Geoffrey D. Strommer of Hobbs, Straus, Dean & Walker, LLP, Portland, OR, counsel for Appellant.

Jay Furtick, Office of the General Counsel, Department of Health and Human Services, Seattle, WA, counsel for Respondent.

Before Board Judges **HYATT**, **DeGRAFF**, and **STEEL**.

**STEEL**, Board Judge.

For all the years at issue in these appeals, the Confederated Tribes of Coos, Lower Umpqua, and Siuslaw Indians (collectively the "Tribe") provided health care services to its members under self-determination contracts or compacts with the Department of Health and Human Services (HHS) Indian Health Service (IHS), pursuant to the Indian Self-Determination and Education Assistance Act (ISDA or Act), Pub. L. No. 93-638, codified as amended at 25 U.S.C. §§ 450, *et seq.* (2000). The Tribe seeks additional amounts of

CBCA 171-ISDA, 235-ISDA, 236-ISDA, 237-ISDA                                    2

indirect contract support cost (CSC) funding from IHS under ISDA contracts and compacts in fiscal years (FYs) 1995 through 1998. IHS moves to dismiss the appeals.[1]

<u>Background</u>

In 1975, Congress enacted the ISDA to encourage Indian self-government by allowing the transfer of certain federal programs operated by the Federal Government, including health care services programs, to tribal governments and other tribal organizations by way of contracts. The amount of contract funds provided to the tribes was the same as the amount IHS would have provided if it had continued to operate the programs. This amount is known as the "Secretarial amount" or "tribal shares." 25 U.S.C. § 450j-l(a). The Secretarial amount, however, included only the funds IHS would have provided directly to operate the programs. It did not include funds for additional administrative costs the tribes incurred in running the programs, but which IHS would not have incurred, such as the cost of annual financial audits, liability insurance, personnel systems, and financial management and procurement systems. S. Rep. No. 100-274, at 8-9 (1987).

In 1988, Congress amended the ISDA to authorize IHS to negotiate additional instruments, self-governance "compacts," with a selected number of tribes. Pub. L. No. 100-472, tit. II, § 201(a), (b)(1), 102 Stat. 2288, 2289 (1988); *see* 25 U.S.C. § 450f note (repealed by Pub. L. No. 106-260, § 10, 114 Stat. 711, 734 (2000)). Under this more flexible Tribal Self-Governance Demonstration Project, the selected tribes were given the option of entering

_____

[1]      On September 22, 2006, the Tribe filed a motion for leave to file an amended complaint. The Tribe stated in its motion that the amended complaint corrects factual inaccuracies with respect to amounts claimed that were discovered in negotiations with IHS to settle these claims. The Government's motion to dismiss, filed on October 30, 2006, also asserted a response in opposition to appellant's motion to amend its complaint. Specifically, IHS contended that the Tribe's amended complaint added a new claim that had not previously been presented to the contracting officer for decision as required by the Contract Disputes Act (CDA), 41 U.S.C. §§ 601-613 (2000). The Tribe responded that the amended complaint merely provides more detail and more accurate data with respect to the same operative facts that form the basis for the claims already presented to the contracting officer.

The presiding judge orally granted the motion to file the amended complaint in a conference with the parties convened after the Government filed its opposition to the motion. This ruling was confirmed at oral arguments that took place on March 22, 2007. Transcript at 51. Citations herein are to the Tribe's amended complaint.

CBCA 171-ISDA, 235-ISDA, 236-ISDA, 237-ISDA                                    3

into either contracts or compacts[2] with IHS to perform certain programs, functions, services, or activities (PFSAs) which IHS had operated for Indian tribes and their members. If a tribe and IHS entered into a compact, they also entered into annual funding agreements (AFAs).

The 1988 amendments also provided for funding for the additional administrative costs which tribes incurred in running health services programs. The statute as amended provides that there shall be added to the Secretarial amount contract support costs "which shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management." 25 U.S.C. § 450j-l(a)(2). These amounts are for "costs which normally are not carried on by the respective Secretary in his direct operation of the program; or . . . are provided by the Secretary in support of the contracted program from resources other than those under contract." *Id.*

There are three categories of CSC: start-up costs, indirect costs (IDC), and direct costs. Start-up costs are one-time costs necessary to plan, prepare for, and assume operation of a new or expanded PFSA, such as the start-up costs for a new clinic. Indirect costs are those costs incurred for a common or joint purpose, but benefiting more than one PFSA, such as administrative and overhead costs. Direct CSC are expenses which are directly attributable to a certain PFSA but which are not captured in either the Secretarial amount or indirect costs, such as workers' compensation insurance, which the Secretary would not have incurred if the agency were operating the program. 25 U.S.C. § 450j-l(a).

The provision of funds for CSC is "subject to the availability of appropriations," notwithstanding any other provision in the ISDA, and IHS is not required to reduce funding for one tribe to make funds available to another tribe or tribal organization. 25 U.S.C. § 450j-l(b).

From one fiscal year to the next, IHS cannot reduce the Secretarial amount and the CSC it provides except pursuant to:

> (A) a reduction in appropriations from the previous fiscal year for the program or function to be contracted;
> (B) a directive in the statement of the managers accompanying a conference report on an appropriation bill or continuing resolution;
> (C) a tribal authorization;

---

[2]      For the purposes of this decision, there are no significant differences between contracts and compacts.

CBCA 171-ISDA, 235-ISDA, 236-ISDA, 237-ISDA                                    4

    (D) a change in the amount of pass-through funds needed under a contract; or
    (E) completion of a contracted project activity or program.

25 U.S.C. § 450j-l(b)(2).

    IHS is required to prepare annual reports for Congress regarding the implementation of the ISDA. Among other things, these reports include an accounting of any deficiency in the funds needed to provide contractors with CSC. 25 U.S.C. § 450j-l(c). The reports which set out the deficiencies in funds needed to provide CSC are known as "shortfall reports." Amended Complaint ¶ 28; 25 U.S.C. § 450j-1(c), (d). Each IHS Area Office, including the Portland Area Office, prepared shortfall reports for FYs 1995 through 1998 which were submitted to Congress. Amended Complaint ¶ 28; Answer ¶ 14.

    For FYs 1995 through 1998, Congress set aside $7.5 million of IHS's appropriated funds into the Indian Self-Determination (ISD) fund which were to be used for the transitional costs of new or expanded tribal programs. Department of the Interior and Related Agencies Appropriations Act, 1995, Pub. L. No. 103-332, tit. II, 108 Stat. 2499, 2528 (1994); Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, 1321-189 (1996); Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, 110 Stat. 3009, 3009-12 (1996); Department of the Interior and Related Agencies Appropriations Act, 1998, Pub. L. No. 105-83, 111 Stat. 1543, 1582 (1997). In connection with the ISD fund, IHS developed a policy for funding CSC for new or expanded programs. IHS established a priority list, called the "queue," and funded CSC for new or expanded programs on a first-come, first-served basis, as determined by the date on which IHS received a tribe's request for funding. *See, e.g.*, IHS Circular No. 96-04, § 4.A(4)(a)(ii). Thus, IHS would fund the first request it received for funding CSC for a new or expanded program, then it would fund the next request it received, and it would continue funding CSC requests until the ISD funds were exhausted for a fiscal year. Requests not funded during one fiscal year moved up the queue to be paid when the next fiscal year's funds were distributed. Appeal File, Exhibit VIIa, Indian Self-Determination Memorandum (ISDM) 92-2 ¶ 4-C(1), at 4.

    One of the 1988 amendments to the ISDA provided that the Contract Disputes Act (CDA) "shall apply to self-determination contracts." 25 U.S.C. § 450m-1(d). In 1994, Congress amended the Contract Disputes Act to include a six-year time limit for presenting a claim to the contracting officer (often an awarding official in the ISDA context):

    All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. . . . Each claim by a contractor against the government relating to

CBCA 171-ISDA, 235-ISDA, 236-ISDA, 237-ISDA                    5

a contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim. The preceding sentence does not apply to a claim by the government against a contractor that is based on a claim by the contractor involving fraud.

41 U.S.C. § 605(a).

<u>Findings of Fact</u>

The Tribe has appealed the deemed denial by IHS of its claims for unpaid CSC it alleges are owed to it under contract numbers 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 (for FY 1995) and 248-96-002 (for FYs 1996 through 1998). In July of 1994, the Tribe submitted a proposal to assume responsibility for expanded health programs, which was approved by IHS and which programs the Tribe administered from FY 1995 through FY 1998 and beyond. Amended Complaint ¶ 9. For this expansion, appellant also sought "Level of Need Funding" (LNF) for additional staffing (LNF expansion). Amended Complaint ¶ 9. The Tribe's initial ISD funding request totaled $186,979. *Id.* ¶ 10. The Tribe received no CSC from the ISD fund in FY 1995, although it performed under its contract. *Id.* ¶ 12.

The Tribe planned a second expansion for FY 1996, the assumption of PFSAs for the Western Oregon Service Unit and Portland Area and Headquarters tribal shares (WOSU expansion). The Tribe assumed responsibility for the new and expanded programs, but CSC on the FY 1996 expansion has also not been paid. The unpaid amount is at least $201,181. Amended Complaint ¶ 20. It appears that the amount of CSC for the FY 1996 expansion was never placed on the ISD queue. *Id.* ¶ 21.

By letter dated December 29, 2003, the Tribe requested a contracting officer's decision for unpaid CSC in FYs 1995 and 1996. In another letter, also dated December 29, 2003, the Tribe sought a contracting officer's decision for unpaid CSC due in FY 1997. The request for a contracting officer's decision respecting unpaid CSC for FY 1998 was presented in a letter dated September 27, 2004. Amended Complaint ¶ 2.

The contracting officer did not issue decisions on these claims. They are therefore deemed denied. 41 U.S.C. § 605(c)(5). Appeals were filed with the Department of the Interior Board of Contract Appeals on December 15, 2005, where they were docketed as

CBCA 171-ISDA, 235-ISDA, 236-ISDA, 237-ISDA                                6

IBCA No. 4724-2005 (now CBCA[3] 171-ISDA) (FY 1995 claim), IBCA No. 4725-2005 (now CBCA 235-ISDA) (FY 1996 claim), IBCA No. 4726-2005 (now CBCA 236-ISDA) (FY 1997 claim), and IBCA No. 4727-2005 (now CBCA 237-ISDA) (FY 1998 claim).

In its appeals the Tribe alleges that IHS failed to pay the full CSC associated with its FY 1995 new and expanded programs in the amount of $122,155. Amended Complaint ¶ 33. The Tribe further asserts that IHS failed to pay the full CSC associated with its FY 1996 ongoing and expanded programs in the amount of $223,398. *Id.* ¶ 36. For FY 1997, the Tribe claims unpaid CSCs in the amount of $220,227. *Id.* ¶ 40. For FY 1998, the Tribe claims that IHS failed to pay full CSCs in the amount of $189,559. *Id.* ¶ 44.

Discussion

In their briefs, the parties make a great many arguments, all of which we have carefully considered. Due to the manner in which we resolve the issues before us, it is not necessary for us to address each of the arguments they raised in order to resolve the motion to dismiss. As explained below, laches does not bar the Tribe's FY 1995 claim. We lack subject matter jurisdiction to consider the FY 1996 and FY 1997 claims. We possess subject matter jurisdiction to consider the FY 1998 claim and we cannot dismiss it for failure to state a claim upon which relief can be granted. Therefore, we grant the Government's motion to dismiss, in part.

FY 1995 (CBCA 171-ISDA)

The parties agree that the claim for FY 1995 accrued on the last day of the fiscal year, which was September 30, 1995, since appellant could expect no further payments for the fiscal year after that date. The Tribe submitted this claim to the awarding official on December 29, 2003. In its motion to dismiss, IHS raises the equitable defense of laches as a bar to the claim for additional CSC for FY 1995.[4]

---

[3]  On January 6, 2007, the Department of the Interior Board of Contract Appeals (IBCA) was merged with other civilian boards into the Civilian Board of Contract Appeals (CBCA). Pub. L. No. 109-163, § 847, 119 Stat. 3136, 3391-95 (2006).

[4]  Usually, the equitable defense of laches is resolved upon motion for summary judgment or relief or, where there are genuine facts in dispute, following trial. *A.C. Aukerman Co. v. R. L. Chaides Construction Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc); *Houston Ship Repair, Inc. v. Department of Transportation*, DOT BCA 4505, 06-2 BCA ¶ 33,381; *2160 Partners v. General Services Administration*, GSBCA 15973, 03-2 BCA ¶ 32,269. IHS raised the issue in its motion to dismiss so we address it here.

CBCA 171-ISDA, 235-ISDA, 236-ISDA, 237-ISDA                                    7

In order to persuade us to apply a laches defense, IHS must establish that the Tribe delayed submitting its claim for an unreasonable and inexcusable length of time and that this delay resulted in prejudice or injury to the Government. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc); *Cornetta v. Lehman*, 851 F.2d 1372, 1377-78 (Fed. Cir. 1988) (en banc); *SUFI Network Services, Inc.*, ASBCA 55948, 08-1 BCA ¶ 33,766, at 167,149; *Systems Integrated*, ASBCA 54439, 05-2 BCA ¶ 32,978, at 163,380. IHS can establish the existence of undue delay and prejudice either by establishing there is a presumption of laches or by offering actual proof of undue delay and prejudice. *Aukerman*, 960 F.2d at 1036.

Relying upon *Aukerman*, IHS asks us to decide that a presumption of laches exists because the Tribe failed to submit its claim to the awarding official within the six-year time limit contained in section 605(a) of the CDA. In addition, IHS says the Tribe waited an unreasonable and inexcusable length of time to submit the claim to the contracting officer, and says its ability to defend against the Tribe's claim has been prejudiced by the delay. Respondent's Motion to Dismiss at 16-18.

We do not need to decide whether we should create a presumption of laches based upon the six-year time limit contained in section 605(a) of the CDA because even if we were to do so, we would conclude that the Tribe has eliminated the presumption by offering proof to show its delay was excusable. The Tribe has shown its delay was the result of other litigation, which is one of the reasons the Court in *Aukerman* recognized as justifying a delay. *Aukerman*, 960 F.2d at 1033, 1038.

On March 5, 1999, the Cherokee Nation of Oklahoma filed a complaint against IHS in the United States District Court for the Eastern District of Oklahoma. The tribe requested certification of a class consisting of "all Indian tribes and tribal organizations operating Indian Health Service Programs under [the ISDA] that were not fully paid their contract support cost needs. . . ." *Cherokee Nation of Oklahoma v. United States*, 199 F.R.D. 357, 360 (E.D. Okla. 2001) (hereinafter *Cherokee Nation of Oklahoma*). Nearly two years later, on February 9, 2001, the court denied the request for class certification. The Tribe asserts that it was a putative class member in this lawsuit, and the Government has not disputed this fact. Appellant's Response to Respondent's Motion to Dismiss at 5-6. Further, the Tribe plausibly suggests that the basis for its FY 1995 claim was uncertain until the Supreme Court issued its decision in *Cherokee Nation v. Leavitt*, 543 U.S. 631 (2005). The Tribe submitted its claim to the awarding official approximately two and three quarter years after the request for class certification was denied in *Cherokee Nation of Oklahoma*, and approximately six months after the Supreme Court's decision in *Cherokee Nation*. The existence of this other litigation provides the Tribe with an excuse for its delay such as would eliminate any presumption of laches.

CBCA 171-ISDA, 235-ISDA, 236-ISDA, 237-ISDA                                    8

Moreover, IHS's proffer of proof of unreasonable delay and prejudice is lacking. Regarding delay, the existence of the litigation discussed in the preceding paragraph counters IHS's proof that the Tribe was unduly dilatory in submitting its claim to the awarding official. Regarding prejudice, IHS asserts that it has been prejudiced by "the fading memories of IHS witnesses and the unavailability of one or more former IHS employees with knowledge concerning the facts regarding the FY 1995 contract." Respondent's Motion to Dismiss at 17. These statements are allegations of counsel, however, and are not evidence. In addition, although witnesses may have retired, this does not mean they are unavailable to testify, *Hoover v. Navy*, 957 F.2d 861, 863-64 (Fed. Cir. 1992). Also, the pendency of the litigation discussed above ought to have alerted IHS to the need to preserve relevant documents for tribes which might become class members.

IHS has failed to persuade us that we should apply a laches defense and bar the claim for FY 1995 CSC. Even if we were to create a presumption of laches based upon section 605(a) of the CDA, the Tribe has eliminated the presumption by providing a valid excuse for its delay. IHS's actual proof of unreasonable delay and prejudice is insufficient to convince us to exercise our discretion in its favor. Therefore, we deny the motion to dismiss the FY 1995 claim on the grounds of laches.[5]

### FY 1996 and FY 1997 (CBCA 235-ISDA and 236-ISDA)

The FY 1996 claim accrued on the last day of the fiscal year, which was September 30, 1996. The Tribe submitted the claim for FY 1996 to IHS on December 29, 2003, more than six years after the claim accrued. On December 29, 2003, The Tribe also submitted to IHS its claim for FY 1997. The FY 1997 accrual date was September 30, 1997, also more than six years before the FY 1997 claim was submitted. IHS moves to dismiss the FY 1996 and 1997 claims for lack of subject matter jurisdiction because the Tribe failed to submit the claims to the awarding official within six years after they accrued, as required by section 605(a) of the CDA. Respondent's Motion to Dismiss at 11-14 . The Tribe contends the six-year time limit was met, because the time limit was either equitably or legally tolled. Appellant's Response to Respondent's Motion to Dismiss at 15-24.

---

[5]    *But see Menominee Indian Tribe of Wisconsin v. United States*, No. 1:07cv-00812 (D.D.C. Mar. 24, 2008), *reconsideration denied* (Apr. 30, 2008), in which the district court dismissed the Menominee Indian Tribe's CSC claim for FY 1995 on the grounds that the claim was barred by laches. The Board is not bound by this decision and we reach a contrary conclusion after considering the arguments raised and facts presented to us.

CBCA 171-ISDA, 235-ISDA, 236-ISDA, 237-ISDA                                    9

Tolling, whether equitable or legal, is a concept which applies to statutes of limitation. If a court (or a board) possesses jurisdiction to consider a claim, the claim must be filed before the limitations period expires or else it becomes unenforceable. A time limit for filing suit can be suspended, in effect, based upon equitable considerations, *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), or based upon legal considerations, *Stone Container Corp. v. United States*, 229 F.3d 1345, 1354 (Fed. Cir. 2000). If the applicable statute is tolled for a sufficient period, the time limit for filing suit is met.

Section 605(a) does not contain a statute of limitations which imposes a time limit for filing suit. Rather, it imposes a time limit which this Board's precedent establishes is a prerequisite to our jurisdiction. *Greenlee Construction, Inc. v. General Services Administration*, CBCA 416, 07-1 BCA ¶ 33,514; accord, *Gray Personnel, Inc.*, ASBCA 54652, 06-2 BCA ¶ 33,378; *see also Pueblo of Zuni v. United States*, 467 F. Supp. 2d 1099 (D.N.M. 2006). As *Gray Personnel* explained:

> Under the CDA, there are two prerequisites to an appeal to the Board or to the United States Court of Federal Claims:
>
> > Those prerequisites are (1) that the contractor must have submitted a proper CDA claim to the contracting officer requesting a decision, . . . [41 U.S.C.] § 605(a), and (2) that the contracting officer must either have issued a decision on the claim, . . . § 609(a), or have failed to issue a final decision within the required time period, . . . § 605(c)(5).
>
> *England v. Sherman R. Smoot Corp.*, 388 F.3d 844, 852 (Fed. Cir. 2004). If a contractor has not submitted a proper claim, the contracting officer does not have the authority to issue a decision:
>
> > The Act . . . denies the contracting officer the authority to issue a decision at the instance of a contractor until a contract "claim" in writing has been properly submitted to him for a decision. § 605(a). Absent this "claim", no "decision" is possible – and, hence, no basis for jurisdiction . . . .
>
> *Paragon Energy Corp. v. United States*, 645 F.2d 966, 971 (Ct. Cl. 1981). Thus, "[i]t is well established that without . . . a formal claim and final decision by the contracting officer, there can be no appeal . . . under the CDA. It is a jurisdictional requirement." *Milmark Services, Inc. v. United States*, 231 Ct. Cl. 954, 956 (1982).

CBCA 171-ISDA, 235-ISDA, 236-ISDA, 237-ISDA                              10

    Section 605(a) as implemented by FAR subpart 33.2, Disputes and Appeals, is the key provision in determining whether there is a proper or formal claim for purposes of the CDA. *See, e.g., Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc) (definition of a claim); *Transamerica Insurance Corp. v. United States*, 973 F.2d 1572, 1576 (Fed. Cir. 1992) (requirement that a claim be submitted for a decision).  [The Federal Acquisition Streamlining Act] added the six-year requirement to this key provision, rather than, for example, to 41 U.S.C. §§ 606 or 609, establishing filing periods at the boards and the United States Court of Federal Claims. We conclude, in view of the placement of the six-year provision in § 605(a), that the requirement that a claim be submitted within six years after its accrual, like the other requirements in that section, is jurisdictional. *Accord Axion Corp. v. United States*, 68 Fed. Cl. 468, 480 (2005).

*Gray Personnel, Inc.*, 06-2 BCA at 165,474-75; *cf. John R. Sand & Gravel Co. v. United States*, 128 S. Ct. 750 (2008).

    The Tribe's failure to submit its claims for FYs 1996 and 1997 to the awarding official within six years after they accrued, as required by section 605(a) of the CDA, deprived this Board of jurisdiction to consider these claims. We cannot suspend the running of the six-year time limit any more than we could suspend the requirements, also found in section 605, that a claim must be submitted to the contracting officer, that a claim must be submitted in writing, and that a claim in excess of $100,000 must be certified.  In the absence of a claim which meets all the requirements of section 605, we lack jurisdiction to consider an appeal.

    We grant the motion to dismiss the claims for FYs 1996 and 1997 for lack of subject matter jurisdiction because the Tribe failed to submit these claims to the awarding official within six years after they accrued, as required by section 605(a) of the CDA.

FY 1998 (CBCA 237-ISDA)

    The claim for FY 1998 accrued on September 30, 1998, and the claim was filed with IHS on September 27, 2004.  Therefore, the presentment of this claim to the contracting officer was timely, and the Board has jurisdiction to consider this claim. 41 U.S.C. § 605(a). IHS, however, asserts that the claim for CSC in 1998 is one for which no relief can be granted because that year was subject to a cap on appropriations.

    We agree with IHS that Congress restricted the funds available for CSC in FY 1998. The requirement to fund CSC was subject to the availability of appropriations,

CBCA 171-ISDA, 235-ISDA, 236-ISDA, 237-ISDA                                  11

notwithstanding any other provisions of the ISDA. 25 U.S.C. § 450j-1(b). Congress restricted IHS's FY 1998 appropriation when it provided "not to exceed $168,702,000 shall be for payments to tribes and tribal organizations for contract support costs associated with ongoing contracts . . . ." Department of the Interior & Related Agencies Appropriations Act, Pub. L. No. 105-83, 111 Stat. 1543, 1582-83 (1997).

The fact that funds for CSC were restricted in FY 1998 does not, however, necessarily mean that the Tribe has failed to state a claim upon which relief can be granted. If providing the Tribe with additional funding for CSC for ongoing contracts would have caused IHS to expend more than $168,702,000 for CSC in FY 1998, then the Tribe had no statutory or contractual right to such additional funding and its claim for additional funding would not be one upon which we could grant relief. *Greenlee County, Arizona v. United States*, 487 F.3d 871 (Fed. Cir. 2007); *Babbitt v. Oglala Sioux Tribal Public Safety Department*, 194 F.3d 1374 (Fed. Cir. 1999); *Ramah Navajo School Board, Inc. v. Babbitt*, 87 F.3d 1338 (D.C. Cir. 1996). If, however, IHS could have provided the Tribe with additional funding for CSC without expending more than $168,702,000 for CSC in FY 1998, the Tribe might be able to establish it had a statutory or contractual right to such funding up to the amount of the unexpended funds, in which case its claim would be one upon which we could grant relief. We do not know how much of the $168,702,000 IHS expended during FY 1998.

Because we do not know whether providing the Tribe with additional funding for CSC for ongoing contracts would have caused IHS to expend more than $168,702,000 for CSC for FY 1998, we deny the motion to dismiss the FY 1998 claim for failure to state a claim upon which relief can be granted.

<u>Decision</u>

The motion to dismiss is **GRANTED** as to CBCA 235-ISDA and 236-ISDA. The motion to dismiss is **DENIED** as to CBCA 171-ISDA and 237-ISDA.

CANDIDA S. STEEL
Board Judge

We concur:

CATHERINE B. HYATT
Board Judge

MARTHA H. DeGRAFF
Board Judge